Urias GRAHAM, et al., Plaintiffs,

v.

PITTSBURGH CORNING CORPORATION, et al.,
Defendants.

Superior Court of Delaware,
New Castle County.

Submitted: Aug. 3, 1990.
Oral Decision: Aug. 3, 1990.
Written Decision: Oct. 4, 1990.

*Armstrong v. Pomerance, supra,* at 178–179 (citation omitted).

Mary Ann Matuszewski, Jacobs & Crumplar, P.A., Wilmington, for plaintiffs.

Paul A. Bradley, McCarter & English, Wilmington, for defendants Celotex Corp. and Keene Corp.

OPINION

TAYLOR, Judge.

I.

Dr. Cunitz testifies regularly in the asbestos trials as an expert in the field of product warnings. His background is human factors psychology. This motion (made in the form of an objection) seeks to bar his testimony that "the manufacturer of a product has a duty to warn, once the "possibility" of potential injury becomes known or the manufacturer should of [sic] (have) known of the possibility of injury". The motion was made by Celotex Corporation and Keene Corporation [defendants].

Defendants' position is that the manufacturer's duty to warn exists only where there is a probability of injury to the user, which they contend requires that the use of the product must be more likely than not to injure the user.[1]

1. Defendants may have confused the standard utilized in determining the causation of a plaintiff's injury with the standard which determines the duty of a manufacturer of a product. The standard for determining proximate cause and the extent of a plaintiff's injury is the "more likely than not" standard.

That standard is not a consideration in determining the duty of a manufacturer and whether or not that duty has been breached. The duty and whether that duty has been breached is

Based upon the analysis which follows, the Court has determined that the standard which defendants would have the Court apply is not supported by current legal thinking or by applicable Delaware precedent.

## II.

The Supreme Court in *Delmarva Power & Light Co., v. Burrows,* Del.Supr., 435 A.2d 716 (1981) addressed and rejected the contention that the duty to warn of the danger "extended only to protect against things "probable" to occur". The Court's analysis was as follows:

> In negligence actions the question is whether the risk of particular consequences are 'sufficiently great to lead a reasonable man ... to anticipate them, and to guard against them.' W. Prosser, The Law of Torts 145 (4th ed. 1971). While the social utility of the activity must be balanced against the risk, 'the question is not one of mathematical probability alone' and '[a]s the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less.' *Id.* at 147–48.
> ... In this case, the Trial Judge correctly did not instruct in terms of probability.

*Burrows* at 719.

The following quotation from *Burrows* summarizes the standard which should be applied:

> Delaware law measures the duties owed in terms of reasonableness. One's duty is to act reasonably, as a reasonably prudent man (or entity) would. (Citations omitted). One breaches that duty by not protecting against an event that a reasonably prudent man would protect against. Stated differently, one's duty encompasses protecting against reasonably foreseeable events. (Citations omitted).

*Id.* at 718.

*Burrows* also considered and rejected the contention that the duty to warn extends only to events "foreseen as probable to happen" and held that the Trial Court's use

determined by applying the principles described

of the phrase "reasonably foreseeable to anticipate" correctly imposed a duty to warn "where it would have been reasonably prudent to warn." *Id.* at 719–20.

*Burrows* involved the duty of a public utility to warn adjoining property owners of the danger of working near the utility's electric lines. While the application of the reasonable man standard might require a different level of care when applied to a utility owning high voltage power lines than it would when applied to most manufacturers of products, the reasonable man standard as defined in that decision would be equally applicable. *Cf.* The *Restatement (Second) of Torts* §§ 342 and 388 (1965) [*Restatement*].

In the earlier case of *Robelen Piano Co. v. Di Fonzo,* 53 Del. 346, 169 A.2d 240 (1961), the Delaware Supreme Court held:

> The standard of care required of all defendants in tort actions is that of a reasonably prudent man, that standard, however, is not a definite rule easily applicable to every state of facts. The details of the standard, of necessity, must be formulated in each particular case in the light of the peculiar facts. In each case the question comes down to what a reasonable man would have done under the circumstances.

*Id.* 169 P.2d at 244–45.

Cases involving claims for asbestos-related injuries have used the following jury instruction:

> A duty to warn arises when a manufacturer and distributor of a product knows, or as a reasonably prudent manufacturer and distributor should know, (when) it involves dangers to users, places that product on the market.

This instruction applies the reasonable person standard announced in *Burrows* as it would apply to a manufacturer or distributor of a product. It is also similar to the language used by this Court in *Wilhelm v. Globe Solvent Co.,* Del.Super., 373 A.2d 218, *aff'd in part, rev'd in part and remanded,* Del.Supr., 411 A.2d 611 (1979), and that approved by the Supreme Court in

in this decision.

*Massey–Ferguson, Inc. v. Wells,* Del.Supr., 383 A.2d 640 (1978).

### III.

The probability (more likely than not) standard advocated by defendants has been rejected by legal writers in defining the duty of a manufacturer or distributor to warn of the dangers of a product. *Restatement* § 388 requires a warning if the supplier "knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied". As used throughout the *Restatement,* the word danger is equated to risk, and risk connotes chance of harm. *Restatement* § 282, comment g. *See generally,* Schwartz & Driver, *Warnings in the Workplace: The Need for a Synthesis of Law and Communication Theory,* 52 U.Cinn.L.Rev. 38 (1983). *American Law of Products Liability 3d* § 32:3 (1987) states the duty to warn exists even "where the possibility of injury is very small, as little as only one in a million, where the potential injury is great". *Prosser and Keeton on Torts (W. Keeton 5th ed. 1984)* § 96 and 1 Madden, *Products Liability* (2d ed. 1988) § 10.1 require warning where the product poses unreasonable risk to the user. Some writers and judges have applied a test which balances the severity of harm which might result from use of the product against the burden or cost of protective action by the manufacturer. *Westinghouse Electric Corp. v. Nutt,* (D.C. App.) 407 A.2d 606 (1979), *citing,* 5 Harper & James, *The Law of Torts* § 28.4 (1956). *See also,* Noel, *Manufacturer's Negligence of Design or Directions for Use of Product,* 71 Yale L.J. 816 (1962); Madden, *supra,* § 4.2.

With the exception of the last described standard, each of the standards embodies a test of reasonableness. *Restatement* § 395 comment e states that the reasonable care required must be commensurate with the level of danger involved. However, it elaborates on the degree of severity of risk needed to activate the duty by stating: "It is not necessary that the risk be a great one, or that it be a risk of death or serious bodily harm.... All that is necessary is that the risk be an unreasonable one." *Id.* at comment d. An unreasonable risk is defined as "an act ... which a reasonable man would recognize as involving a risk of harm to another". *Restatement* § 291. Correspondingly, reasonable care is defined as "the care ... which a reasonable man in [the actor's] position, with his information and competence, would recognize as necessary to prevent the act from creating an unreasonable risk of harm to another." *Restatement* § 298.

Despite the difference in verbiage, these definitions demonstrate that the Delaware Courts and the *Restatement* have accepted the reasonable man standard for determining the duty of a manufacturer of a product to warn users.

### IV.

Defendants rely on *Nacci v. Volkswagen of America, Inc.,* Del.Super., 325 A.2d 617, 620 (1974); *Schneider v. Chrysler Motors Corp.,* 401 F.2d 549 (8th Cir.1968); and *Gorman v. Murphy Diesel Co.,* Del.Super., 29 A.2d 145 (1942). All of the cited cases dealt with liability claimed on the ground that the product was unsafe for its intended use.

*Nacci* discussed the concept of foreseeability as a standard in determining a manufacturer's liability for alleged improper design of its product. However, it rejected that concept and applied a standard based on conduct of an "ordinarily prudent person, acting as a manufacturer". While *Nacci* spoke of lessening the probability of harm, it did not use the phrase in a quantitative sense, but used it in a non-quantitative comparative sense as synonymous with possibility. *Cf. General Motors Corp. v. Freeman,* Del.Supr., 164 A.2d 686 (1960); *Burrows, supra.*

Defendants' reliance on *Schneider* to support its contention that its duty is limited to injuries which are more likely than not to occur does not support that proposition. *Schneider* involved injury which occurred when a person's eye came into contact with a vent window of his automobile when he leaned forward to look inside the

automobile through the window. The following language states the foreseeability standard which *Schneider* applied:

> ... In applying the doctrine of foreseeability the particular injury or precise form of the injury need not be perceived or foreseen, but if there is some probability of harm sufficiently serious that an ordinary reasonable person would take precautions to avoid it then failure to take such care is negligence.

401 F.2d at 556–57. Here, as in *Nacci* the Court was not using the phrase "some probability" in the quantitative sense of over 50 percent but referred to some recurrence.

Defendants rely on *Gorman* for the proposition that "knowledge of probable, not possible danger is an essential element of the liability." *Gorman* involved a claim against the manufacturer of a diesel engine which had been used by three successive owners which exploded injuring plaintiff. Upon a demurrer by the manufacturer, this Court sustained the demurrer on the ground that the complaint lacked specific allegations of particular negligence on the part of the manufacturer.

*Gorman* represented Delaware's first departure from the historic requirement that a privity of relationship must exist between a defendant manufacturer and an injured plaintiff in order for the plaintiff to pursue a claim against the manufacturer. Following the seminal decision of *MacPherson v. Buick Motor Car Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), which expanded the scope of duty of a manufacturer of a product to protect the user of the defective product, *Gorman* incorporated the probability requirement announced in *MacPherson* as a limiting factor in applying that duty. The probability requirement announced in *Gorman* was applied in various cases in this State. *See Hartford Accident & Indem. Co. v. Anchor Hocking Glass Corp.*, Del.Super., 55 A.2d 148 (1947); *Hunter v. Quality Homes, Inc.*, Del.Super., 68 A.2d 620 (1949); *Barni v. Kutner*, Del.Super., 76 A.2d 801 (1950); *Behringer v. William Gretz Brewing Co.*, Del.Super., 169 A.2d 249 (1961).

In *Ciociola v. Delaware Coca–Cola Bottling Co.*, Del.Supr., 172 A.2d 252 (1961), the Delaware Supreme Court reviewed the subject of privity of contract as applied to both a contract claim as well as to a negligence claim. It held that the duty of the manufacturer of a product is to maintain due care and to comply "with the conduct toward the consuming public required of [manufacturers of that product]." *Ciociola* at 258. This decision departed from the standard applied in *Gorman*. The Supreme Court in *Ciociola* cited *Gorman* in discussing a different issue. Since the court did not incorporate the "probability" factor announced in *Gorman* in its formulation of the standard of liability for a manufacturer of a product, the inference is that the court has overruled *Gorman* in that respect. By *Ciociola*, the Supreme Court has adopted a reasonable manufacturer test for determining whether a manufacturer of a product is liable for injuries resulting from use of its product.

The standard used in *Ciociola* is in harmony with the historical comment under *Restatement* § 395 that adherence to the concept of a product being "inherently dangerous" if negligently made, "has very largely been superseded by a recognition that what is involved is merely the ordinary duty of reasonable care imposed upon the manufacturer, as to any product which he can reasonably expect to be dangerous if he is negligent in its manufacture or sale."

I conclude that the probability requirement (relied on by defendants) which *MacPherson* and *Gorman* incorporated as part of the revolutionary rejection of the traditional requirement of privity has been superseded by the reasonable manufacturer standard.

Finally, with respect to defendants' contention the manufacturer's duty to warn is limited by foreseeability measured by probability (more likely than not), it has been noted above that the Supreme Court in *Burrows* rejected the contention that the duty to warn extends only to events "foreseen as probable to happen". The court held that the duty to warn "encompasses protecting against reasonably foreseeable

events." 435 A.2d at 718. It further held that the phrase "where it would have been reasonably prudent to warn" is an acceptable paraphrasing of the correct standard. *Id.* at 720. The significance of the holding is the rejection of the probability standard in favor of a reasonable man (or manufacturer) standard in determining the duty.

## V.

In summary, in the context of negligence, duty is equated to the conduct of a reasonable (or reasonably prudent) person under the circumstance. Hence, the standard for determining the duty of a manufacturer to warn is that which a reasonable (or reasonably prudent) person engaged in that activity would have done, taking into consideration the pertinent circumstances at that time. It is a judgmental consideration and not the application of a quantitative determinant. Defendants' motion seeks to have the Court limit the expert's testimony to a quantitative determinant and is not supported by modern authority.

Based on the foregoing considerations, defendants' motion to limit expert testimony on the duty of a manufacturer to warn of the dangers of its product as described at the beginning of this Opinion is DENIED.